**Frank PENNY, Plaintiff,**

v.

**WILLIAMS & FUDGE, INC., Defendant.**

**Case No. 6:10–cv–452–Orl–DAB.**

United States District Court, M.D. Florida, Orlando Division.

Jan. 5, 2012.

Theodore F. Greene, III, Law Offices of Theodore F. Greene, LC, Orlando, FL, Shireen Hormozdi, Krohn & Moss, Ltd., Los Angeles, CA, for Plaintiff.

Ernest H. Kohlmyer, III, Mary Grace Dyleski, South Milhausen, PA, Orlando, FL, for Defendant.

## ORDER

DAVID A. BAKER, United States Magistrate Judge.

This cause came on for consideration without oral argument on the following motion filed herein:

**MOTION: DEFENDANT'S RE-NEWED MOTION FOR JUDG-MENT AS A MATTER OF LAW OR**

ALTERNATIVE MOTION FOR NEW TRIAL (Doc. No. 89) FILED: November 1, 2011

**THEREON** it is **ORDERED** that the motion is **DENIED.**

### Background

On March 25, 2010, Plaintiff filed a one count Verified Complaint alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (herein "FDCPA" or "the Act") (Doc. No. 1). Plaintiff alleged that:

Defendant's violations include, but are not limited to, the following:

a. Defendant violated § 1692c(a)(3) by repeatedly contacting Plaintiff at his place of employment even though Defendant knew that Plaintiff's employer prohibits the consumer from receiving such communications.

b. Defendant violated § 1692d of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Plaintiff.

c. Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

*Id.* In its Answer (Doc. No. 8), Defendant denied violating the Act and alternatively asserted the *bona fide* error defense. 15 U.S.C. § 1692k(c).

Following an unsuccessful mediation and well after the deadline to amend had passed, Plaintiff moved for leave to file a First Amended Complaint (Doc. No. 38). In his motion, Plaintiff asserted that he "seeks to amend the Complaint to specifically identify every provision of the FDCPA Plaintiff alleges Defendant violated, as supported by the facts revealed during discovery." *Id.* The proposed Amended Complaint continued to allege that Defendant violated § 1692d by "en-gaging in conduct the natural consequence of which is to harass oppress and abuse Plaintiff" (Doc. No. 38–2, Allegation 33c), but added allegations regarding violations of other specific sections of the Act. Defendant objected to the motion as untimely under Federal Rule 16 (Doc. No. 40). Alternatively, Defendant asserted that it was prejudiced even if Rule 15 and not Rule 16 applied, and objected to the merits of the proposed new pleading, contending that "Plaintiff has presented no factual basis to support his new allegations" (Doc. No. 40). While the motion to amend was pending, Defendant moved for summary judgment on the existing Complaint (Doc. No. 43).

By Order, the District Judge denied the motion to amend, citing a lack of diligence: "Plaintiff does not meet its [sic] burden to show good cause for amending the Complaint six months after the October 20, 2010 deadline, two weeks after the April 15, 2011 discovery deadline and one week before the May 6, 2011 dispositive motion deadline" (Doc. No. 45). The District Judge made clear that the Court was denying the motion "for failure to demonstrate good cause and therefore will not reach Plaintiff's Rule 15 arguments or Defendant's argument that the proposed amendments lack a factual basis." *See* Doc. No. 45 at fn. 3, citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

Subsequently, the parties consented to the jurisdiction of the United States Magistrate Judge, and the case was referred to the undersigned (Doc. No. 54). The parties filed their Joint Pretrial Statement on July 15, 2011 (Doc. No. 55). In that Statement, Plaintiff listed as an exhibit his "T–Mobile Phone Records showing calls made by Defendant to Plaintiff" (herein "the T–Mobile records" or "cell phone records")

(Doc. No. 55 at 4). In a footnote, Defendant noted:

3. Defendant has not yet seen the T-Mobile phone records and so **objects to them as a trial exhibit.** Defendant anticipates that if the records at issue appear to be true, complete, and accurate, that Defendant will likely stipulate to their status as a business record exception to the hearsay rule, thus negating the need for Plaintiff to call a T-mobile records custodian at trial, while preserving all other objections (including relevance) for trial.

(Doc. No. 55, at 4 n. 3, emphasis added).

The Court denied the motion for summary judgment (Doc. No. 56) and held a Final Pretrial Conference (Doc. No. 64). At the conference, defense counsel again noted that the T-Mobile records were not produced and sought to confirm that "no T-Mobile records will be introduced." Plaintiff responded that he had thought the records were produced and wanted an opportunity to talk with counsel about the issue, but concluded that "we'll live with it, if it was our mistake." The Court accepted Plaintiff's statement, and directed Plaintiff to file a motion, if he needed to raise the issue again. No motion was filed.

Following the Pretrial Conference, Plaintiff's counsel determined that he had, indeed, failed to provide the T-Mobile records to opposing counsel, and, on September 2, 2011, he sent the records to defense counsel by a series of e-mails (Doc. No. 98). Subsequently, the parties drafted the Joint Trial Exhibit List, which did not include the T-Mobile records (Doc. No. 98-2).

On October 3, 2011, the case was tried to a jury (Doc. No. 70). Plaintiff introduced evidence regarding the Call Sheet prepared by Defendant, which purported to reflect all calls made to anyone with respect to this account. Plaintiff's evidence included, among other things, testimony regarding the time, frequency and character of the calls made to his home and to his workplace. With respect to the T-Mobile records, the following occurred during examination of Plaintiff by his counsel:

BY MR. GREENE:

Q. Did you receive calls from Rick or anyone at Williams & Fudge even after that threatening message?

A. I believe there were more calls to my home phone.

Q. With respect to—before I transition to that, with respect to your cell phone, we've looked at your Vonage records. Have you had a chance during the course of preparing for trial to look over your cell phone records?

MR. KOHLMYER [defense counsel]:

Your Honor, I object to this.

This was subject to a motion in limine about the records that were produced from his cell phone records. There's already been a ruling on this at the pretrial regarding the production. We did not get the T-Mobile records in time, and there's already an order on the motion in limine regarding the cell phone.

So I would object to any questions regarding the cell phone or him referring to documents that was already subject to the motion to strike.

MR. GREENE:

The ruling with respect to the cell phones was that the records were not going to come in. And we're not trying to put those in. Those aren't anything that plaintiff has proffered. You'll see from the bench copy of—

THE COURT:

Well, don't ask him the question about the records. Just ask him a question.

MR. GREENE:

All right.

(Doc. No. 85, p. 54, Lines 22–25, through p. 55, Lines 1–23).

At the conclusion of Plaintiff's case, Defendant moved for a directed verdict, which the Court denied (Doc. No. 71–72). The jury returned a verdict, finding that Defendant violated § 1692d of the Act, but did not violate Section 1692c(a)(3) or § 1692d(5) (Doc. No. 78). Judgment in favor of Plaintiff in the amount of $500 was entered, consistent with the jury's verdict (Doc. No. 79), and this motion followed.

The matter has been fully briefed (*see* Doc. Nos. 89, 96, 97, 98, and 104) and the Court has reviewed the arguments, the record, and the applicable law. For the reasons set forth herein, the motion is **DENIED.**

### Standards of Law

■ A judgment as a matter of law under Rule 50, Federal Rules of Civil Procedure, is appropriate where, drawing all reasonable inferences in the light most favorable to the nonmoving party, the Court concludes that no legally sufficient evidentiary basis allows a reasonable jury to find for the nonmoving party on an issue. *See Rainey v. Holder,* 412 Fed. Appx. 235, 237 (11th Cir.2011) [1]; *Advanced Bodycare Solutions, LLC v. Thione Intern., Inc.,* 615 F.3d 1352, 1360 (11th Cir. 2010) (in evaluating a motion for judgment as a matter of law, the court considers all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party and then determines whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party); *Howard v. Walgreen Co.,* 605 F.3d 1239, 1242 (11th Cir.2010) (motion should be granted only when the plaintiff presents no legally sufficient evidentiary basis for a

reasonable jury to find for him on a material element of his cause of action.).

In ruling on a Rule 50 motion, the court must draw all reasonable inference in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, at 299 (2d ed. 1995)). However, "the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly,* 210 F.3d 1334, 1337 (11th Cir.2000). There must be a "substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions" in order to deny a motion for judgment as a matter of law. *Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995).

■ Pursuant to Rule 59, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R.Civ.P. 59(a)(1)(A). A party may seek new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251,

---

1. *Rainey,* as an unpublished opinion of the Eleventh Circuit, constitutes persuasive, and not binding, authority. *See* 11th Cir. R. 36–2 and I.O.P. 6.

61 S.Ct. 189, 85 L.Ed. 147 (1940). A motion for a new trial should be granted when " 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984)). However, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence. *Lipphardt*, 267 F.3d at 1186 (internal citation omitted).

### Discussion

Defendant claims that it is entitled to judgment or, alternatively, a new trial on the § 1692d claim due to several alleged evidentiary errors. Defendant claims that: 1) the Court erred in allowing Plaintiff to present evidence in support of the § 1692d claim that "related to purported violations of several other FDCPA provisions that were either never pled ... or not at issue in the case"; and 2) the Court erred in excluding the T–Mobile records which Defendant wished to use as impeachment evidence. Defendant contends that "[b]ut for the admission of improper evidence, not relevant to the alleged violation of FDCPA § 1692d, and the exclusion of admissible impeachment evidence ... the jury would not have had a legally sufficient evidentiary basis to find for the Plaintiff on his § 1692d claim" (Doc. No. 89 at 4).

#### "Law of the Case"

According to Defendant:

The Order denying Plaintiff's Motion for Leave to File Plaintiff's First Amended Complaint [Doc 45], became the law of the case with regard to Plaintiff's FDCPA claims, and the factual allegations supporting them, eliminated the thirteen (13) new factual allegations in ¶¶ 11–26 of the proposed Amended Complaint [Doc 38–2], barred further consideration of Plaintiff's allegations as to FDCPA Sections 1692b(3), 1692c(a)(2), 1692d(6), 1692e(10) and 1692e(11), and limited the scope of evidence at trial to the factual allegations and FDCPA claims set forth in Plaintiff's Complaint [Doc 1] only.

(Doc. No. 89 at 2).

Thus, urges Defendant, the Court erred in allowing Plaintiff to introduce evidence of violations of these other provisions as non-specific harassing conduct in violation of § 1692d. The Court finds, however, that the "law of the case" doctrine does not assist Defendant here.

In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Supreme Court described the doctrine, thus:

A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Id.* at 817, 108 S.Ct. at 2178 (citations omitted). *See also Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003). While it is clear that the doctrine is not without exception, this Court need not evaluate whether an exception applies here as the doctrine "comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 348, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979), citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895).

As noted above, the District Judge denied the motion to amend *solely* on the

issue of lack of diligence. She did not, as implied by Defendant, address the merits of the new allegations or "limit the scope of the issues and evidence at trial" in any way. In fact, the District Judge specifically noted that she was *not* reaching any other argument. The Order stands only for the legal conclusion that the motion to amend was impermissibly untimely—a conclusion the undersigned has not disturbed. As the pleading was never allowed, it has no part in framing issues for trial and does not have the *res judicata* effect urged by Defendant. An order denying leave to amend as untimely is simply not the equivalent of an order *in limine,* with respect to evidence, nor an order of dismissal on the merits, with respect to claims. No error is shown.

### The meaning of § 1692d

The "law of the case" contention aside, Defendant's larger objection is its belief that the Court allowed evidence relating to Defendant's conduct which was not relevant to the section of the Act pled in the Complaint, but was relevant to other unpled subsections of the Act. Defendant urges that the Court erred in allowing evidence of violations of *specific* sections to be considered by the jury with respect to the *general* claim that Defendant violated the "catch all" provision of Section 1692d. At issue, then, is the scope of the catch all provision.

The Act provides:

§ 1692d. **Harassment or abuse**

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. *Without limiting the general application of the foregoing,* the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C.A. § 1692d (emphasis added).

While this portion of the Act lists several discrete violations, "§ 1692d is explicitly not limited to the conduct proscribed by subsections (1)-(6)." *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir. 1985); *Meadows v. Franklin Collection Service, Inc.,* 414 Fed.Appx. 230, 232–233 (11th Cir.2011) (noting the subsections are "a non-exhaustive list of prohibited conduct."). Indeed, the specific subsections of the Act "merely provide[ ] an *illustration* of the sort of conduct that is prohibited by § 1692d." *Diaz v. D.L. Recovery Corp.,* 486 F.Supp.2d 474, 477 (E.D.Pa.2007) (emphasis in original). The catch all provision was purposely broadly drawn:

This legislation expressly prohibits a host of harassing, deceptive, and unfair debt collection practices. These include: threats of violence; obscene language; the publishing of 'shame lists;' harassing or anonymous telephone calls; imper-

sonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks. *In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice.* This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.

S.Rep. No. 95–832, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698 (emphasis added).

Moreover, to "help ensure the most complete protection possible, the court has adopted a 'consumer protective standard,' which means that '[c]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse.'" *Winberry v. United Collection Bureau, Inc.,* 697 F.Supp.2d 1279, 1286 (M.D.Ala.2010) (citing *Jeter, supra*). This broadly drawn provision, alleged broadly in the Complaint, was the basis for the jury's award in favor of Plaintiff.

■ Defendant argues that the Court should have sustained Defendant's objection and excluded all evidence that did not pertain to the three FDCPA claims at issue. Evidence of all the communications between the parties was necessarily relevant to one or more of the three claims[2] and/or the affirmative defense.[3] For example, Defendant contends that the Court erred in overruling Defendant's objection

to evidence of calls by Defendant to Plaintiff after 9:00 p.m. and before 8:00 a.m., as "Plaintiff never alleged in the operative Complaint, testified in deposition or presented any evidence prior to trial that Defendant violated § 1692c(a)(1) by calling him at his home or on his cellular phone after 9:00 p.m. or before 8:00 a.m. local time, yet the Court permitted Plaintiff to testify and present evidence that Defendant called Plaintiff between the hours of 9:00 p.m. and 8:00 a.m. local time, on multiple occasions." (Doc. No. 89 at p. 12). Plaintiff, however, did not prosecute a claim for violation of § 1692c(a)(1), but pled a claim for the general catch all provision of Section 1692d. To the extent Defendant asserts that the allegations with respect to the catch all provision were too vague, the Court notes that Defendant did not move to dismiss the pleading for failure to state a claim, nor did it seek a more definite statement as to that claim. As for deposition testimony, Plaintiff noted the basis of the claim was the calls to his work and the distress caused by "these calls to my house." (Doc. No. 43–1 at p. 39, *see also* Affidavit of Frank Penny–Doc. No. 46–4). Moreover, Defendant's own call records and Plaintiff's home phone records detail the time of the calls, and were admitted without objection as joint exhibits. There is no unfair surprise or prejudice here, and the details of the calls were relevant.

Nor is the Court persuaded that the *only* evidence a jury can consider under the catch-all provision is evidence that is not related to other subsections of the Act. As pointed out by Plaintiff, the catch all

---

**2.** Plaintiff alleged violations of §§ 1692c(a)(3) and 1692d(5), making evidence of all calls made to Plaintiff at work or home relevant. Moreover, the catch all provision includes, for example, unnecessary calls to third parties, making all communications on the account relevant. *See* Federal Trade Commission,

Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. at 50,105.

**3.** Indeed, evidence as to the communications was introduced by joint exhibits of Defendant's own records of the calls and contacts and Plaintiff's home telephone records.

claim was not tried in a vacuum, but was tried along with other claims and defenses, implicating the totality of the conduct between the parties. The general harassment provision is broadly drawn and remedial, and "whether conduct harasses, oppresses, or abuses will ordinarily be a question for the jury." *Jeter,* 760 F.2d at 1179.

In *McGrady v. Nissan Motor Acceptance Corp.,* 40 F.Supp.2d 1323, 1335–36 (M.D.Ala.1998), a plaintiff claimed that Nationwide harassed her in violation of the FDCPA by calling her numerous times, being "very rude and abrupt" and even yelling at plaintiff's mother on the telephone, calling her at home and at work after being asked to not do so, calling her employer to ask questions concerning her employment, and leaving messages stating only that "Pam" called. The trial court denied Nationwide's motion for summary judgment on the alleged violation of § 1692d, finding "Defendant Nationwide's numerous phone calls, treatment of Plaintiff's mother, and leaving of messages that 'Pam called' are examples of conduct that could be considered conduct 'the natural consequence of which is to harass, oppress, or abuse.'" *Id., citing* 15 U.S.C. § 1692d.

The *McGrady* court cited a similar case: In *Rutyna v. Collection Accounts Terminal, Inc.,* the defendant debt collector sent the plaintiff a letter stating that the debt collector's "field investigator has now been instructed to make an investigation in your neighborhood and to personally call on your employer." 478 F.Supp. 980, 981 (N.D.Ill.1979) (cited with approval in *Jeter,* 760 F.2d at 1180 n. 12). The plaintiff became upset and feared that the investigator's investigation would inform her neighbors of her debt and related medical problems. *Id.*

Although the alleged conduct did not fit within one of the six specifically prohibited types of conduct listed in § 1692d, the court found that the defendant's letter violated the general standard articulated in § 1692d. *Id.* at 981–982. The Eleventh Circuit in *Jeter* characterized the conduct in *Rutyna* as "the type of coercion and delving into the personal lives of debtors that the FDCPA in general, and § 1692 in particular, was designed to address." *Jeter,* 760 F.2d at 1180 n. 12.

*McGrady,* 40 F.Supp.2d at 1336.

Similarly here, Plaintiff testified at trial to a whole manner of conduct, including, among other things, that he received between 50 and 70 calls from Defendant to collect a debt which he told them he did not owe; that he received calls at work, including a message left at his desk phone that stated: "Come on Frank, pick up or I'm going to have to call your employer at the 4000 extension again" (Doc. No. 85, p. 54, line 5), and that Defendant was calling Plaintiff's relatives (Doc. No. 85, pp. 59–60), leaving messages like, "Rick is trying to reach you," or "Theresa is trying to reach you," which got back to his ill wife, causing embarrassment and stress. Some of the conduct does not fall squarely within a specific provision (such as the calls to third parties, which are an example of conduct within the catch all provision[4]). While some of the evidence could relate to other violations (as in *McGrady* ), "it is not unusual for an action to violate more than one FDCPA provision." *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994) (citing FTC commentary that several different FDCPA sections may apply to a given factual situation and finding "even absent a separate 1692c

---

**4.** *See* Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices

Act, 53 Fed.Reg. at 50,105.

claim, we conclude that this conduct [threatening and intimidating calls at an inconvenient time and place] may be relevant to a harassment claim [under § 1692d]"). The Court finds the evidence was relevant to the harassment claim and the jury was entitled to consider it.

*The T–Mobile Records*

Defendant's final contention is that the Court erred in disallowing Defendant's use of the T–Mobile records for impeachment purposes.[5] This contention appears to be based on the premise that "Defendant never lodged any evidentiary objection to the T–Mobile records" (Doc. No. 89 at p. 4). As detailed above, however, that is incorrect. Defendant objected to the exhibit in the Final Pretrial Statement, at Pretrial Conference, and during Plaintiff's direct examination. Having successfully urged exclusion, Defendant cannot claim that it was nonetheless entitled to admission of the records for its own purposes.

**Conclusion**

Construing the evidence in favor of Plaintiff, the Court finds a legally sufficient basis for a reasonable jury to rule in his favor. The Court finds that the standard for judgment as a matter of law or a new trial has not been met. The motion is therefore **denied.** The Clerk is directed to close the file.

**5.** Defendant does not cite to the Transcript but the Court assumes it is referring to the colloquy at Doc. No. 85, pps. 11–113.